**HOLMES, TAYLOR & JONES LLP**
Andrew B. Holmes (SBN: 185401)
abholmes@htjlaw.com
Matthew D. Taylor (SBN: 220032)
matthew.taylor@htjlaw.com
617 South Olive Street, Suite 1200
Los Angeles, California 90014
Tel: (213) 985-2200
Fax: (213) 973-6282

*Attorneys for Defendant Bert Dohmen*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT GOODMAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br><br>BERT DOHMEN, an individual,<br>Defendant. | Case No. CV15-00020 FFM<br><br>**DEFENDANT BERT DOHMEN'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   May 2, 2016<br>Time:   10:00 a.m.<br>Courtroom: 580 |

## I. INTRODUCTION

*Mad Men's* Don Draper once advised: "If you don't like the conversation, change the subject." Plaintiff Albert Goodman seems to have listened. Rather than arguing in support of his claims as articulated in the Complaint, Goodman devotes much of his summary judgment opposition to describing new and novel theories of liability against Dohmen, most notably claiming, for the very first time, that Dohmen's plan all along was to induce Goodman into covering the Croesus Fund's operating expenses and that Dohmen acted improperly in failing to close the fund when he was unable to raise additional outside investment funds.

The Court should not be persuaded by this attempted sleight of hand. Apparently recognizing the case pleaded in his complaint suffers from various fatal flaws, Goodman is now trying to invent a new case he believes more likely to survive summary judgment. Nonetheless, for the reasons set forth in Defendant's motion and in the present reply brief, all of plaintiff's claims should be dismissed.

## III. LEGAL ARGUMENT

### A. The Subscription Agreement Goodman Signed and Initialed Is Enforceable Against Him.

Goodman first argues the Subscription Agreement which he signed, *and each page of which he initialed*, should not be enforced against him since it was not accompanied by the PPM, a document Goodman claims he never received. Goodman bases this argument on certain language contained in the Subscription Agreement stating the "Subscription Booklet must not be used if it is not accompanied by a copy of the Memorandum."

However, Goodman's proposed interpretation of this provision is an unreasonable one since this language was clearly not intended to nullify the agreement in its entirety. Rather, this was intended as cautionary language, designed to ensure a prospective investor such as Goodman had received and reviewed the PPM prior to investing. In fact, the opening two sentences of the Subscription Booklet, in their entirety, read as follows:

> This Subscription Booklet contains a Subscription Agreement and other investor documents for use only in connection with the private offering being made by Croesus Fund, L.P., a Delaware limited partnership (the "Partnership") to eligible investors pursuant to a Confidential Private Placement Memorandum dated September 2011 (the "Memorandum"). This Subscription Booklet must not be used if it is not accompanied by a copy of the Memorandum.

The use of the term Subscription *Booklet* rather than Subscription *Agreement* makes clear that the phrase which Goodman now claims eviscerates the enforceability of the Subscription Agreement was actually intended as a warning to Goodman to ensure he had received all materials related to the fund, including the "Confidential Private Placement Memorandum" prior to signing. Moreover, under Delaware law, the Court may properly interpret this agreement at the summary judgment stage[1].

Although the issue of whether Goodman actually received the PPM prior to signing the Subscription Agreement is clearly in dispute, what is clearly *not* in dispute is that Dohmen attempted to send Goodman the PPM and believed it had been sent to him, that Goodman signed the Subscription Agreement (and initialed each page thereof), thereby representing he had received and reviewed the PPM, and the first time Goodman told Dohmen he had not received it was in in July 2014, after retaining legal counsel.

  **B. The First, Second and Fourth Causes of Action Fail Since No Triable Issue of Fact Exists as to Whether Goodman *Actually* or *Justifiably* Relied on the Alleged Misrepresentation in Deciding to Invest in the Croesus Fund.**

Plaintiff's first cause of action (common law fraud), second cause of action (promissory fraud) and fourth cause of action (negligent misrepresentation) all require plaintiff to prove he actually and reasonably relied on the supposed misstatements in

---

[1] Under Delaware law, "the threshold inquiry when presented with a contract dispute on a motion for summary judgment is whether the contract is ambiguous." *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 830 (Del.Ch.2007). The court decides the meaning of an unambiguous contract as a matter of law. *JANA Master Fund Ltd. v. CNET Networks, Inc.*, 954 A.2d 335, 338–39 (Del.Ch.2008). "Ambiguity does not exist simply because the parties disagree about what the contract means." *United Rentals*, 937 A.2d at 830. Rather, contracts are ambiguous "when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id.* Since the provision at issue is not reasonably susceptible to Goodman's proposed interpretation, no triable issue exists here.

deciding to invest. As discussed in Defendant's moving papers, *all* of plaintiff's fraud claims fail since no triable issue of fact exists as to whether Goodman actually relied on any of the alleged misrepresentations or as to whether any reliance was justified.

In response to unequivocal deposition testimony from Goodman, himself, that the only statements he *actually* relied on in deciding to invest in the Croesus Fund were Dohmen's representations to personally manage the fund, and that Goodman's admiration for Dohmen's newsletters was the actual "driving force" behind his decision (UFs 56, 75), Goodman fails to offer *any* countervailing evidence to suggest he actually relied on the alleged misrepresentations. Accordingly, Goodman has failed to meet his burden of proof in connection with the present motion. *See, e.g., Celotex Corp. v. Catrett*, 477 US 317, 323-324 (1986) ("Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, … (former) Rule … 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.") In reality, Goodman's own sworn testimony lays bare the *real* reasons he chose to invest in the Croesus Fund, which had nothing to do with the email exchanges with Dohmen he now claims misled him.

Moreover, the timing of the alleged misrepresentations also make it clear Goodman could not possibly have relied on them, since it is apparent from his September 29, 2011 email he'd made up his mind to invest in the Croesus Fund by then, something Goodman confirmed at his deposition. (UF 55.) Goodman's response to this argument is that up until the date when he actually transferred his funds (November 14, 2011 for the first tranche and December 7, 2011 for the second), he could have changed his mind and chosen not to invest. While true as far as it goes, this logic does not speak to the relevant legal issue: whether Goodman actually relied on the statements. Nor does it change the fact that Goodman, himself, admitted under oath he did *not* rely on these statements and further admitted he had made up his mind to invest by September 29, 2011, before any of the alleged misstatements were made.

Holmes, Taylor & Jones LLP
617 South Olive Street, Suite 1200
Los Angeles, California 90014

Moreover, even if the Court disagrees and finds a triable issue of fact as to whether Goodman actually relied on these statements, there is no triable issue as to whether such reliance was justified. This is because, under Delaware law, a party that contractually agrees it has not relied on outside statements in deciding to invest cannot later claim to have, in fact, justifiably relied on such outside statements. *H-M Wexford v. Encorp*, 832 A.2d 129, 142 [fn. 18] (Del. Ch. 2003). Goodman's only response to this argument is to dismiss the Subscription Agreement as unenforceable. And, as discussed above, this is clearly not the case.

### C. Goodman's Second Cause of Action Also Fails Since the Alleged Misrepresentations Were Not False *Promises*.

With respect to Goodman's second cause of action for *promissory* fraud, the opposition withdraws that portion of the claim based upon the allegations contained in paragraph 27 of the Complaint (relating to supposed November 2011 representations Dohmen would invest $1 million of his own money in the fund). What remains is Goodman's allegation that, on November 29, 2011, Goodman misrepresented his intention to invest additional funds (Complaint ¶ 28) and supposed representations by Goodman as to how he would manage the funds' investments (Complaint ¶ 29.)

On November 29, 2011, Dohmen wrote Goodman of his "plan…to increase" his personal investment in the fund. Goodman argues, in essence, this was a "promise" Dohmen never intended to keep. However, a statement someone *plans* to do something is not the same as a *promise* to do something. This sort of statement of future intent cannot reasonably form the basis for a claim for promissory fraud, which requires a "false representation of fact." *Boulden v. Albiorix, Inc.*, C.A. No. 7051-VCN * 21 (Del. Ch. Jan 31, 2013).

Similarly vague and unactionable are Goodman's claims arising from supposed misstatements as to the long term investment strategies to be employed by the Fund. Theses alleged misstatements are described in detail in § III (D) of Dohmen's motion. Simply stated, none of these statements were false or misleading. Instead, they

merely represent Dohmen encouraging Goodman to take a long term view of his investment.

### D. Goodman's Third Cause of Action Also Fails Since Dohmen Did Not *Conceal* Anything and Since Any Alleged Concealment Did Not Cause Goodman to Invest.

As discussed more fully in Dohmen's motion, plaintiff's third cause of action for fraudulent concealment fails because no triable issue of fact exists as to the existence of a fiduciary duty between Goodman and Dohmen, an issue discussed more fully below. However, even if the Court disagrees as to the existence of a duty, Goodman has failed to raise a triable issue of fact as to whether, in fact, Dohmen actively concealed any of the facts at issue or whether this alleged concealment "caused" the losses.

Under Delaware law, a claim for fraudulent concealment requires, *inter alia*, proof of a "deliberate concealment by the defendant of a material past or present fact" as well as "causation." *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del.1987). With respect to causation, as already discussed, given Goodman's sworn deposition testimony as to the real reasons he chose to invest in the Croesus Fund, there is simply no reason to believe any of the alleged concealed activity by Dohmen caused Goodman to invest, something he had made up his mind to do by September 29, 2011.

Moreover, Dohmen did not actually conceal anything from Goodman. The written correspondence between them makes clear that Dohmen made clear to Goodman the amount he had invested, the status of his attempts to attract additional investors and the various investment strategies he was employing on the fund's behalf. Goodman could have exited the fund at any time but chose not to do so.

### E. No Triable Issue of Fact Exists As To Whether A Fiduciary Relationship Existed Between Dohmen and Goodman.

As articulated in his complaint, plaintiff's breach of fiduciary claim was based upon allegations that "Dohmen induced and encouraged [him] to invest $1 million in the Fund by misrepresenting the level of risk, and by failing to properly inform

Holmes, Taylor & Jones LLP
617 South Olive Street, Suite 1200
Los Angeles, California 90014

Plaintiff about the speculative nature of the Fund's investments." (Complaint ¶ 52.) In essence, these allegations were little more than a relabeling of plaintiff's fraud claims as breaches of Dohmen's alleged fiduciary duties.

However, Goodman's opposition now theorizes, *for the very first time*, that Dohmen also breached alleged fiduciary duties by misleading Goodman about being the fund's only investor, allowing the fund to continue when it was allegedly not in Goodman's best interest to do so, failing to adhere to a long term investment strategy and by generally making poor investment decisions. (Opposition at pg. 15:14-22.) Once again, Goodman has now changed his tune. Nonetheless, this claim should still be dismissed at the summary judgment stage.

As discussed in Dohmen's motion, the facts here simply don't give rise to a fiduciary relationship for the simple reason that Delaware law requires a finding of dependence, and a condition of superiority, of one party to another. *Lank v. Steiner*, 213 A.2d 848, 852 (Del.Ch. 1965). No such imbalance is present here.

However, even if the Court concludes that a triable issue of fact does exist as to whether a fiduciary relationship existed, no triable issue of fact exists as to whether Dohmen can be held liable for the conduct Goodman now claims breached these supposed duties. This is because section 5.08(a) of the Limited Partnership Agreement provides:

> "The General Partner and each Affiliated Person shall not be liable, responsible nor accountable in damages or otherwise to the Partnership or any Partner…for (i) any acts performed or the omission to perform any acts, within the scope of the authority conferred on the General Partner by this Agreement except by reason of acts or omissions found by a court … to have been made in bad faith or to constitute fraud, willful misconduct or gross negligence…"

Since, other than plaintiff's fraud claims, which fail for the reasons described above, the remainder of the conduct by Dohmen that supposedly breached his fiduciary duties arose from acts or omissions "within the scope of the authority conferred on the General Partner," this claim must fail.

This contractual provision is entirely consistent with principles of Delaware

limited partnership law that expressly allows limited partnership agreements to waive liability for breaches of fiduciary duties under the terms of the limited partnership agreement. S*ee* DEL. CODE ANN. tit. 6, § 17-1101(d).[2]

Although Goodman dismisses the Limited Partnership Agreement, too, as "unenforceable," presumably because Goodman never signed it, he cites no legal authority for this argument. In fact, Delaware law, specifically provides "[a] partner of a limited partnership … is bound by the partnership agreement whether or not the partner or assignee executes the partnership agreement." DEL. CODE ANN. tit. 6 § 17-101(12). As such, Goodman's argument has no merit.

By signing the Subscription Agreement, and *initialing each page thereof,* Goodman "subscribe[d] for a partnership interest…**upon the terms and conditions set forth … in the Partnership's Limited Partnership Agreement** dated September 26, 2011 (as the same may be amended, supplemented or revised from time to time…" (emphasis added.) Thus, it should have been abundantly clear to Goodman he was agreeing to be bound by terms of the Limited Partnership Agreement.

### F. Goodman's First, Second, Third, Fourth and Fifth Causes of Action Are All Barred By The Three Year Statute of Limitations as Well.

Delaware applies a three-year statute of limitations to tort claims as well as claims for breach of fiduciary duty, which Goodman does not dispute. Nonetheless, Goodman argues the statute of limitations should be tolled in this case due to Dohmen's alleged efforts to fraudulently conceal certain key facts. This argument is unpersuasive. Tolling requires a plaintiff to demonstrate "actual artifice by the defendant that either prevented the plaintiff from gaining knowledge of material facts

---

[2] This statutory provision reads as follows:

> "To the extent that, at law or in equity, a partner or other person has duties (including fiduciary duties) to a limited partnership or to another partner or to another person that is a party to or is otherwise bound by a partnership agreement, the partner's or other person's duties may be expanded or restricted or eliminated by provisions in the partnership agreement; provided that the partnership agreement may not eliminate the implied contractual covenant of good faith and fair dealing."

or led the plaintiff away from the truth." *In re Tyson Foods, Inc.*, 919 A.2d 563, 584-85 (Del. Ch. 2007). No such artifice exists here.

With respect to Goodman's claims Dohmen misled him about being the only investor in the fund, this claim is belied by the written correspondence between them which clearly indicates Dohmen told Goodman he was *attempting* to attract additional investors but had not yet done so. Dohmen never told Goodman there were other investors in the fund.

Similarly, Dohmen never concealed from Goodman the fact he had not invested additional funds beyond the original $200,000. He merely told Goodman he hoped to invest additional funds in the future, a statement that was true when made.

Finally, Goodman was fully aware of the investment strategies being employed by Goodman every step of the way. Notwithstanding Goodman's allegations, he has presented no evidence that Dohmen misled him in any way regarding the nature of the investments he would be making on the fund's behalf.

### G. Goodman's Sixth Cause of Action Fails For Various Reasons.

Goodman's sixth cause of action should be dismissed for the reasons articulated in Dohmen's motion. This claim, like its state law brethren, requires actual reliance on the supposed misrepresentations. And, as already discussed, Goodman admitted under oath he did not actually rely on these statements.

Moreover, Goodman's opposition fails to even confront the issue of "loss causation," the requirement there be a causal nexus between the alleged misconduct and the economic harm suffered. As discussed in Dohmen's declaration, the fund performed poorly, and Goodman suffered losses, due to investment decisions made by Dohmen, decisions that did not work out for a variety of macroeconomic reasons. These investment decisions have no causal nexus with the alleged misconduct.

### H. Goodman's Seventh Cause of Action Fails Since Goodman Concedes That Delaware Rather Than California Law Applies to The Case.

The issue of whether California's Unfair Competition Law is intended to apply to securities transactions, for which both sides cite conflicting authority, is effectively moot since Delaware rather than California applies to plaintiff's state law claims.

Dohmen's motion argues that Delaware rather than California law applies to the present dispute because of the choice of law provisions contained in both the Subscription Agreement and Limited Partnership Agreement. Despite arguing elsewhere in his opposition that both of these agreements are unenforceable, Goodman appears to concede their enforceability for purposes of these choice of law provisions and does not dispute the applicability of Delaware law.

In light of this concession, Goodman's seventh cause of action for violation of California's Unfair Competition Law should be dismissed since Business & Professions Code § 17200 *et seq*. is a California creation with no applicability here. *See, e.g. Its Just Lunch Intern LLC v. Island Park Enterprise Group, Inc*., 2008 WL 4683637 * 6 (C.D.Cal. 2008)(dismissing a claim for violation of Cal. Bus. & Prof. Code § 17200 after finding a Nevada choice of law provision enforceable.)[3]

### I. Goodman's Eighth Cause of Action For Professional Negligence Should Be Dismissed.

Plaintiff shrugs off Dohmen's argument in support of dismissal of the eighth cause of action for professional negligence as lacking any legal support. This is not the case. As articulated in the motion, Goodman should not be allowed to personally sue Dohmen for making bad investment decisions without pleading and proving *alter ego* liability, something Goodman has not even attempted to do.

This is because the Limited Partnership Agreement gives Macro Wave (*i.e.* the General Partner) the *exclusive* right to manage the hedge fund's "assets, affairs and

---

[3] In *Its Just Lunch*, unlike in this case, the adverse party contested the enforceability of the choice of law provision at issue. As a result, the court was required to examine whether Bus. & Prof. Code § 17200 *et seq*. embodied a "fundamental policy of California" in that case, which it concluded it did not. Since Goodman does not dispute the enforceability of the choice of law provisions, no such analysis is necessary here.

operations." (UFs 18, 19). Thus, to the extent that Goodman has a professional negligence claim, it is against Macro Wave and, under Nevada law, an individual member cannot be held personally liable for the debt of the limited liability company absent an express agreement to the contrary. The cases cited by Goodman to support his claim for the existence of a fiduciary duty do not speak to this issue.

By suing Dohmen *personally* for supposed negligence in carrying out the Croesus Fund's investment strategy, Goodman is attempting to circumvent the stringent requirements for alleging and proving *alter ego* liability under Nevada law. *See, e.g. In re Giampietro*, 317 B.R. 841, 848-849 (2004) (discussing the applicability of traditional *alter ego* factors in the context of a Nevada limited liability companies.)

Finally, even if Goodman could state a claim against Dohmen for professional negligence, as previously discussed, the Limited Partnership Agreement *expressly* precludes Dohmen from being held liable "for any acts performed or the omission to perform any acts, within the scope of the authority conferred on the General Partner… except by reason of acts or omissions found by a court … to have been made in bad faith or to constitute fraud, willful misconduct or gross negligence…" Liability for *negligence*, including professional negligence, is expressly prohibited by the agreement.

## III. CONCLUSION

In conclusion, for the reasons articulated herein and in Dohmen's motion for summary judgment and supporting documents, all eight causes of action against Dohmen should be dismissed.

Respectfully submitted,

Dated: April 18, 2016        **HOLMES, TAYLOR & JONES LLP**

Matthew D. Taylor
*Attorneys for Defendant Bert Dohmen*