RUFUS-ISAACS ACLAND & GRANTHAM LLP
ALEXANDER RUFUS-ISAACS, State Bar No. 135747
  *aisaacs@rufuslaw.com*
232 N. Canon Drive
Beverly Hills, California  90210
Telephone: (310) 274-3803
Facsimile: (310) 860-2430

Attorneys for Plaintiff ALBERT
GOODMAN

HOLMES, TAYLOR & JONES LLP
ANDREW B. HOLMES (SBN: 185401)
  *abholmes@htjlaw.com*
MATTHEW D. TAYLOR (SBN: 220032)
  *matthew.taylor@htjlaw.com*
617 South Olive Street, Suite 1200
Los Angeles, California 90014
Telephone: (213) 985-2200
Facsimile: (213) 973-6282

Attorneys for Defendant BERT DOHMEN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALBERT GOODMAN, an individual, | CASE No. 2:15-cv-00020-FFM |
| Plaintiff, | **FINAL PRETRIAL CONFERENCE ORDER** |
| v. | |
| BERT DOHMEN, an individual, | |
| Defendant. | |

Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, IT IS ORDERED:

1.     The parties are plaintiff Albert Goodman, and defendant Bert Dohmen. Each of these parties has been served and has appeared. No other parties were named in the pleadings. The pleadings which raise the issues are: Complaint filed January 5, 2015; Answer filed March 23, 2015.

RUFUS-ISAACS ACLAND & GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

2.     Federal jurisdiction and venue are invoked upon these grounds: This court has original jurisdiction under 28 USC § 1332, in that this is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars, and venue is proper in this District pursuant to 28 U.S.C. § 1391 because Dohmen has a place of business in this District. The facts requisite to federal jurisdiction are admitted.

3.     The trial is estimated to take 4 trial days.

4.     The trial is to be a non-jury trial. On or before October 4, 2016, the parties shall lodge and serve by e-mail the findings of fact and conclusions of law the party expects the Court to make upon proof at the time of trial as required by L.R. 52-1.

5.     The following facts are admitted and require no proof:

a)  Commencing December 1, 2010, through to the present, Bert Dohmen was the manager and sole member of Macro Wave Management LLC ("Macro Wave").

b)  Dohmen had not formed or managed a hedge fund before he started the Fund.

c)  Dohmen holds no licenses or qualifications pertaining to the financial services industry.

d)  Dohmen originally explored creating a hedge fund based in the British Virgin Islands, but in September 2011, he decided to form a US domestic hedge fund.

e)  Macro Wave was the General Partner of Croesus Fund L.P. ("Fund") throughout its existence.

f)  The Fund was formed as a Delaware limited partnership in September

2011.

g) On November 1, 2011, Dohmen invested $200,000 in the Fund.

h) Goodman invested $500,000 in the Fund on November 14, 2011, and then a further $500,000 on December 14, 2011.

i) Goodman earned both a bachelor's (in business) and masters of business administration degree from USC.

j) Since approximately 1982, when a family business was sold, Goodman's primary source of income has been his investments.

k) Goodman has not been employed, in a traditional sense, since the early 1990s.

l) In the early 1990s, Goodman utilized three separate brokers in connection with his personal investments.

m) As of November 2015, Goodman maintained investment accounts with six separate broker-dealers

n) Goodman has maintained a brokerage accounts with a bank in Germany for approximately 15 years.

o) Goodman reads various financial newsletters and financial periodicals.

p) Prior to investing in the Croesus Fund, Goodman had previously held as much as $1 million in precious metal investments.

q) Since 2008, Goodman has invested approximately $2 million into RivalFly, a privately held limited liability company.

r) Goodman owns real estate in Costa Rica, Illinois and Wisconsin and estimates that more than half of his wealth is in real estate.

s) In approximately 2011, plaintiff invested (and lost) $100,000 in a company called Lift Spray, which produced a caffeine mouth spray.

t) On two occasions, Goodman had invited Dohmen to attend the Milken Global Conference with him.

RUFUS-ISAACS ACLAND & GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

u) Over the years, Goodman had asked Dohmen to invest in various businesses in which Goodman was involved but Dohmen declined to do so.

v) Dohmen never formally acted as Goodman's broker or investment advisor.

w) Goodman would sometimes base his personal investment decisions on information contained in Dohmen's newsletters.

x) Goodman does not recall taking any notes regarding his telephone conversation(s) with Dohmen relating to the Croesus Fund.

y) On or about June 8, 2012, Macro Wave sent Goodman a letter.

z) On or about June 29, 2012, Dohmen sent Goodman a report.

aa) On or about November 5, 2012, Dohmen sent plaintiff a report.

bb)     On or about June 14, 2013, Macro Wave sent Goodman a letter.

cc) On or about December 31, 2013, Dohmen sent Goodman a letter.

dd)     On or about February 18, 2014, Dohmen sent Goodman a report.

ee) On or about March 5, 2014, Dohmen sent plaintiff a report.

ff) On or about May 12, 2014, Dohmen sent Goodman a report.

6.     The following facts, though stipulated, shall be without prejudice to any evidentiary objection: None.

7.     **PLAINTIFF**:

(a)     Plaintiff plans to pursue the following claims against the following defendants:

1)     Dohmen committed fraud because he misrepresented to Goodman that other people would be investing in the Fund;

2)     Dohmen committed fraud because he misrepresented to

1  Goodman that the fund was a long term investment;

2           3)      Dohmen committed fraud by concealment because he concealed

3  the lack of other investors from Goodman;

4           4)      Dohmen committed fraud by concealment because he concealed

5  the Fund's short term investment strategy from Goodman;

6           5)      Dohmen breached his duty of loyalty to Goodman by making

7  misrepresentations that other people would be investing in the Fund;

8           6)      Dohmen breached his duty of loyalty to Goodman because he

9  concealed the Fund's aggressive investment strategy;[1]

10          7)      Dohmen breached his duty of loyalty to Goodman because it was

11 inherently uneconomic for Dohmen to operate the hedge fund with only one outside

12 investor and $1.2 million in assets;

13          8)      Dohmen committed securities fraud because he misrepresented

14 to Goodman that other people would be investing in the Fund; and

15          9)      Dohmen committed securities fraud because he misrepresented

16 to Goodman that the Fund was a long term investment.

17

18     (b)      The elements required to establish Plaintiff's claims are:

19     **Fraud by Misrepresentation**

20          (1) a false representation, usually one of fact, made by the defendant;

21          (2) the defendant's knowledge or belief that the representation was false,

22 or was made with reckless indifference to the truth;

23          (3) an intent to induce the plaintiff to act or to refrain from acting;

24

25

26 [1] Defendant disagrees that this issue remains in the case after Summary Judgment.
27 The factual issue to be determined at trial is the same as that for the other causes of
   action:  Did Defendant breach his duty of loyalty to Goodman by failing to follow a
28 long term investment strategy.

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

(4) the plaintiff's action or inaction taken in justifiable reliance upon the representation;

(5) damage to the plaintiff as a result of such reliance.

**Fraud by Concealment[2]**

(1) the deliberate concealment of material facts by the defendant, or by silence in the face of a duty to speak;

(2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

(3) an intent to induce the plaintiff to act or to refrain from acting;

(4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and

(5) damage to the plaintiff as a result of such reliance.

**Breach of Fiduciary Duties**

(1) a fiduciary duty existed; and

(2) the defendant breached that duty.[3]

---

[2] Defendant disagrees that these are the appropriate elements under Delaware law. Defendant's proposed elements are:  Defendant "knowingly acted to prevent [the] plaintiff from learning facts or otherwise made misrepresentations intended to put the plaintiff off the trail of inquiry." *Krahmer v. Christie's Inc*., 911 A.2d 399, 407 (Del. Ch. 2006) (internal quotation marks omitted).  If the plaintiff's claim is based on a theory of incomplete disclosure, the plaintiff must show that the statements at issue "were made with contemporaneous knowledge or reckless disregard of the information" which rendered the statements misleading.  *Metro Comm'n Corp. BVI v. Advanced Mobilecomm Techs. Inc*., 854 A.2d 121, 154 (Del. Ch. 2004).

[3] Defendant reminds the Court that following Summary Judgment, this Court determined that any breach of fiduciary duty could only be based on fraud (as elsewhere described herein), or on a breach of the duty of loyalty.

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

**Securities Fraud**

    (1) a material misrepresentation or omission of fact,

    (2) scienter,

    (3) a connection with the purchase or sale of a security,

    (4) transaction and loss causation, and

    (5) economic loss. *In re Daou Sys., Inc*., 411 F.3d 1006, 1014 (9th Cir. 2005).

    (c)    In brief, the key evidence Plaintiff relies on for each of the claims is:

    **1)**    **Dohmen Committed Fraud Because He Misrepresented To Goodman That Other People Would Be Investing In The Fund;**

        Element #1: a false representation, usually one of fact, made by the defendant

In a telephone conversation prior to Goodman investing in the Fund, Dohmen told Goodman that he had other investors for the fund.

In an email dated November 18, 2011, Goodman asked Dohmen, "how many investors do you have?" Dohmen replied in an email dated November 20, 2011: "There are several other close friends I told about the fund and they are now liquidating some assets in order to participate."

        Element #2: the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth

Since the beginning of November, Dohmen had not contacted any new people and as of December 13, 2011, none of his personal friends were reviewing the documents.

In deposition, Dohmen testified that as of November 1, 2011, he had mentioned the Fund to a number of people in general terms, but he had not talked seriously to anyone about the details except Goodman and two other friends who

1   were not interested in investing.

2       As of November 6, 2011, Dohmen had not spoken to anyone other than

3   Goodman and the two other investors whom he had referenced in his November 1st

4   email.

5       In deposition, Dohmen testified that he wanted to wait until the Fund was

6   performing well before he made such approaches, and he thought this would take a

7   month or two, i.e., in December or January, if all went well (which it did not).

8       In deposition, Dohmen testified that he thought his statement about certain

9   "close friends (who) are now liquidating some assets in order to participate" was

10  based on statements that had been made to him, but he refused to identify the

11  individuals who made those statements, and he could not recall if he had spoken to

12  any potential investors other than the two he referenced in his November 1st email.

13      In an email dated November 26, 2011, Dohmen told Goodman that "until we

14  get a good track record, I only want investors I know, or have been referred by

15  friends, and that I have spoken to." Dohmen was seeking to give Goodman the false

16  impression that he was actively seeking other investors, when in fact he was not.

17      The Fund started losing money from the very start because its first

18  investments were in gold and according to Dohmen, they "immediately started to go

19  down." This meant that Dohmen never made any further efforts to bring in other

20  investors. However he did not tell Goodman that he was not looking for other

21  investors until May 2012. Yet he had told Fund Associates that he was not looking

22  for other investors in an email dated March 7, 2012.

23      <u>Element #3: an intent to induce the plaintiff to act or to refrain from acting</u>

24      Dohmen knew that Goodman did not want to be the only investor in the Fund

25  and the issue was under discussion from the outset.

26      November 1, 2011, Dohmen emailed Goodman: "We have not announced the

27  fund yet. Haven't had time to speak to more than two people about it so far.

28

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

1  However we will start contacting some of my good friends soon..."

2       On November 6, 2011, Dohmen wrote to Goodman: "there may be several

3  other people coming in now."

4       In the November 20th email, Dohmen stated: "Soon we will make an

5  announcement to a wider group of investors who have indicated interest over the

6  past few years in some kind of managed money program."

7       In an email dated December 9, 2011, Goodman asked Dohmen "how many

8  investors?"

9       In an email dated December 12, 2011, Goodman again asked Dohmen "how

10  many are we?"

11       In an email dated December 13, 2011, Dohmen told Goodman that "Personal

12  friends that have expressed interest are now reviewing the documents."

13       Element #4: the plaintiff's action or inaction taken in justifiable reliance
14       upon the representation

15       Goodman believed that Dohmen had other investors who had committed

16  100% to invest in the Fund.

17       In reliance on the November 6th email, Goodman believed that there were

18  some more people coming in.

19       In reliance on the November 20th email, Goodman believed that other

20  investors would be investing and that they were liquidating their assets to do so, and

21  he based his decision to invest in the Fund and/or to keep his investment in the

22  Fund, on this belief.

23       As of November 26, 2011, Goodman did not realize that there were no other

24  investors and thought that Dohmen was soliciting other investors.

25       If he had known that there were no other investors in the Fund, Goodman

26  would not have invested in the Fund.

27       Goodman was very concerned when he finally discovered on May 14, 2012,

28

1  that he was the only outside investor in the Fund. In fact, in an email dated May 14,

2  2012, he asked Dohmen to return his investment.

3  <u>Element #5: damage to the plaintiff as a result of such reliance.</u>

4  Goodman has been damaged because he was thereby induced to invest

5  $500,000, and then a further $500,000, and he lost the entire amount.

6  **2)    Dohmen Committed Fraud Because He Misrepresented To**

7  **Goodman That The Fund Was A Long Term Investment**

8  <u>Element #1: a false representation, usually one of fact, made by the</u>

9  <u>defendant</u>

10  On May 14, 2012, Dohmen told Goodman that "this is supposed to be a long

11  term investment."

12  In a report dated June 8, 2012, Dohmen told Goodman that the Fund "is

13  designed to protect and benefit from the long term trends we foresee over the next

14  several years in several areas." And on page 3 of that report, he says "The primary

15  goal of the fund is to be a precious metals related investment for the long term."

16  <u>Element #2: the defendant's knowledge or belief that the representation</u>

17  <u>was false, or was made with reckless indifference to the truth</u>

18  Dohmen caused the Fund to invest in high-risk areas, predominantly gold-

19  related stocks, just as gold prices crashed, and he also leveraged these investments,

20  thereby increasing their volatility.

21  Dohmen employed a degree of leverage in the Fund that induced such high

22  variability of return to the Fund as to preclude any adherence to a viable longer-term

23  strategy.

24  Over the course of 2012, monthly returns of the Fund, positive or negative,

25  exceeded 8% in 11 out of 12 calendar months, 9% in 9 of them, 10% in 8, and 12%

26  in 7. On a cumulative basis, the Fund was down by 1/3 by the end of April, and after

27  recovering to within 11% of its 2012 beginning net equity by the end of August, it

28

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

was back down to its starting net equity two months later at the end of October on its way to 70% a cumulative decline by year-end.

The 2012 monthly and cumulative returns are so volatile as to be indicative of a hedge fund, ostensibly being managed in pursuit of a long-term strategy, to instead be relatively 'out of control' from one sizeable short-term move to another.

Element #3: an intent to induce the plaintiff to act or to refrain from acting

Dohmen intended to cause Goodman to keep his investment in the Fund, and not to withdraw it.

Element #4: the plaintiff's action or inaction taken in justifiable reliance upon the representation

Goodman reasonably relied on Dohmen's representations about its long term investment strategy when he invested in the Fund.

Element #5: damage to the plaintiff as a result of such reliance.

Goodman has been damaged because he was induced not to withdraw his investment in the Fund, which as of mid-May 2012 amounted to around $792,000, and subsequently lost his entire $1 million investment.

**3)   Dohmen Committed Fraud By Concealment Because He Concealed The Lack Of Other Investors From Goodman**

Element #1: the deliberate concealment of material facts by the defendant, or by silence in the face of a duty to speak

Dohmen had a fiduciary duty to Goodman.

Dohmen did not disclose to Goodman prior to May 14, 2012, that he was the sole outside investor in the Fund.

Element #2: the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

Dohmen knew that there would be no other outside investors based on the evidence identified under Element #2 of Claim No. 1.

RUFUS-ISAACS ACLAND & GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

Element #3: an intent to induce the plaintiff to act or to refrain from acting;

See evidence identified under Element #3 of Claim No. 1.

Element #4: the plaintiff's action or inaction taken in justifiable reliance upon the representation;

See evidence identified under Element #4 of Claim No. 1.

Element #5: damage to the plaintiff as a result of such reliance.

Goodman has been damaged because he was thereby induced to invest $500,000, and then a further $500,000, and he lost the entire amount.

### 4)   Dohmen Committed Fraud By Concealment Because He Concealed The Fund's Short Term Investment Strategy From Goodman

Element #1: the deliberate concealment of material facts by the defendant, or by silence in the face of a duty to speak

Dohmen had a fiduciary duty to Goodman.

Dohmen did not disclose to Goodman prior to January 25, 2013, that he was not following a long term investment strategy for the Fund.

Element #2: the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

See evidence identified under Element #2 of Claim No. 2.

Element #3: an intent to induce the plaintiff to act or to refrain from acting;

See evidence identified under Element #3 of Claim No. 2

Element #4: the plaintiff's action or inaction taken in justifiable reliance upon the representation;

See evidence identified under Element #4 of Claim No. 2

Element #5: damage to the plaintiff as a result of such reliance.

Goodman has been damaged because he was thereby induced to invest $500,000, and then a further $500,000, and he lost the entire amount.

**5)** **Dohmen Breached His Duty Of Loyalty To Goodman By Making Misrepresentations That Other People Would Be Investing In The Fund**

(1) a fiduciary duty existed;

Dohmen is the principal of the Fund's corporate general partner, and he exercised control over the Fund's property.

(2) the defendant breached that duty.

Goodman invested his first $500,000 on or about November 14, 2011. In an email dated November 18, 2011, Goodman asked Dohmen, "how many investors do you have?" Dohmen replied in an email dated November 20, 2011: "There are several other close friends I told about the fund and they are now liquidating some assets in order to participate."

In an email dated November 20, 2011, Dohmen stated: "Soon we will make an announcement to a wider group of investors who have indicated interest over the past few years in some kind of managed money program."

In an email dated December 9, 2011, Goodman asked Dohmen "how many investors?" In an email dated December 12, 2011, Goodman again asked Dohmen "how many are we?" In an email dated December 13, 2011, Dohmen told Goodman that "Personal friends that have expressed interest are now reviewing the documents."

These representations were all false, per the evidence set forth in support of Claim #1. Dohmen did not disclose to Goodman prior to May 14, 2012, that he was the sole outside investor in the Fund.

**6)** **Dohmen Breached His Duty Of Loyalty To Goodman Because He Concealed the Fund's Aggressive Investment Strategy**

1) a fiduciary duty existed;

RUFUS-ISAACS ACLAND & GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 ⋅ Fax (310) 860-2430

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

1    Dohmen is the principal of the Fund's corporate general partner, and he

2    exercised control over the Fund's property.

3        (2) the defendant breached that duty.

4        See evidence identified under Claim No. 2. Further, Dohmen needed

5    spectacular results to attract new investors, and therefore engaged in a wildly

6    speculative, leveraged, short term trading strategy that could not possibly be

7    reconciled with the long term investment approach that had been represented to

8    Goodman. As Goodman's expert John Maine, states in his declaration, "Dohmen's

9    deviations from his advertised strategy were not a matter of degree but one of a total

10   abandonment." Yet Dohmen failed to reveal this strategy to Goodman, and despite

11   promising in May 2012 to provide him with quarterly reports, he failed to do so, or

12   when he did provide reports, he did so late, or he failed to include the relevant

13   information that would reveal the Fund's aggressive investment strategy. And when

14   he told Goodman in January 2013 that he was changing his investment strategy, he

15   failed to disclose to Goodman that he had already changed his strategy and had lost

16   disastrously, especially in the last quarter of 2012.

17

18       **7)   Dohmen Breached His Duty Of Loyalty To Goodman Because It**

19   **Was Inherently Uneconomic For Dohmen To Operate The Hedge Fund With**

20   **Only One Outside Investor And $1.2 Million In Assets**

21       1) a fiduciary duty existed;

22       Dohmen is the principal of the Fund's corporate general partner, and he

23   exercised control over the Fund's property.

24       (2) the defendant breached that duty.

25       Goodman's investment in the Fund was highly beneficial for Dohmen

26   because he was able to use Goodman's money to pay most of the start-up and

27   ongoing costs of the Fund. On the other hand, it was disastrous for Goodman

28

1  because as the sole investor, his funds were used to pay for most of the Fund's

2  expenses, whereas if there had been other investors, he would have shared the

3  expenses with them. As explained in the declarations of Robert Conner and John

4  Maine and supporting exhibits, the Fund had significant start-up and operating

5  expenses, and it makes no economic sense to start a hedge fund, which has such

6  expenses, let alone continue to manage it, unless it has far more than $1.2 million in

7  assets and the expenses are spread between a number of investors. Otherwise, there

8  are no economics of scale, and a single investor like Goodman would be better off

9  with his assets in a regular low-cost investment account. Dohmen's duty of loyalty

10  meant that he should not have proceeded with the Fund with Goodman as the only

11  outside investor.

### 8)   Dohmen Committed Securities Fraud Because He Misrepresented To Goodman That Other People Would Be Investing In The Fund

15  (1) A Material Misrepresentation Or Omission Of Fact

16  See evidence identified under Element no. 1 in Claim No. 1.

17  (2) Scienter

18  See evidence identified under Element no. 2 in Claim No. 1.

19  (3) A Connection With The Purchase Or Sale Of A Security

20  The misrepresentations were made in connection with the sale to Goodman of

21  an interest in the Fund.

22  (4) Transaction And Loss Causation

23  Goodman did not want to be the only outside investor in the Fund. If had

24  known that he was the only outside investor, he would not have invested.

25  (5) Economic Loss

26  Goodman invested $1 million in the Fund, which was lost.

RUFUS-ISAACS ACLAND & GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 · Fax (310) 860-2430

**9)      Dohmen Committed Securities Fraud Because He Misrepresented To Goodman That The Fund Was A Long Term Investment**

(1) A Material Misrepresentation Or Omission Of Fact

See evidence identified under Element no. 1 in Claim No. 1.

(2) Scienter

See evidence identified under Element no. 2 in Claim No. 1.

(3) A Connection With The Purchase Or Sale Of A Security

The misrepresentations were made in connection with the sale to Goodman of an interest in the Fund.

(4) Transaction And Loss Causation

Goodman did not want to be the only outside investor in the Fund. If he had known that he was the only outside investor, he would not have invested.

(5) Economic Loss

Goodman invested $1 million in the Fund, which was lost.

**DEFENDANT:**

(a)    Defendant plans to pursue the following counterclaims and affirmative defenses:

    i.  Plaintiff's claims are barred by the relevant statute of limitations; and

    ii.  Plaintiff failed to mitigate his damages.

(b)    The elements required to establish Defendant's counterclaims and affirmative defenses are:

    i.  If the cause of action accrued more than three years before the filing of the case, Delaware's three-year statute of limitations bars

RUFUS-ISAACS ACLAND & GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

1    recovery.[4]

2    ii.  Plaintiff had a duty to mitigate his damages.  If Defendant is found

3         liable for damages to Plaintiff, Plaintiff is not entitled to recover

4         damages that Defendant proves Plaintiff could have avoided with

5         reasonable efforts or expenditures.[5]

6    (c)  In brief, the key evidence Defendant relies on for each counterclaim

7         and affirmative defense is:

8    i.   The statute of limitations had already run for any cause of action

9         that accrued prior to January 5, 2012.  This issue survived summary

10        judgment only because the Court indicated that a triable issue of fact

11        existed as to whether Plaintiff was on notice of the fact that only he

12        and Defendant had money invested in the fund prior to that date.

13        Testimony will be elicited and emails from prior to that date will be

14        introduced for this issue.

15   ii.  Plaintiff was given opportunities to withdraw from the Croesus

16        Fund in at least May and August of 2012, but Plaintiff chose not to.

17   _____

18   [4] Plaintiff believes that this is only a partial statement of the applicable elements
19   because it does not address the element of tolling. Under the fraudulent concealment
     doctrine of tolling, a plaintiff must show that a defendant "knowingly acted to
20   prevent plaintiff from learning facts or otherwise made misrepresentations intended
     to put [ ] plaintiff off the trail of inquiry." *Krahmer v. Christie's Inc.,* 911 A.2d 399,
21   407 (Del.Ch.2006).

22   [5] Plaintiff believes that this is only a partial statement of the applicable elements.
23   Under Delaware law, there is only a general duty to mitigate damages if it is
     reasonable and feasible to do so, and even then, a plaintiff need not take
24   unreasonably speculative steps to meet that duty. *Am. Gen. Corp. v. Cont'l Airlines
     Corp.,* 622 A.2d 1, 11 (Del. Ch.), aff'd, 620 A.2d 856 (Del. 1992), citing *Edward M.*
25   *Crough, Inc. v. Department of General Services of District of Columbia,* D.C.App.,
26   572 A.2d 457 (1990) (duty to mitigate damages with reasonable effort and without
27   substantial risk of loss).

28

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 · Fax (310) 860-2430

The stipulated facts, numerous emails, and testimony will be introduced for this issue.

8.     In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

(a)     Whether Dohmen committed fraud because he misrepresented to Goodman that other people would be investing in the Fund;

(b)     Whether Dohmen committed fraud because he misrepresented to Goodman that the fund was a long term investment;[6]

(c)     Whether Dohmen committed fraud by concealment because he concealed the lack of other investors from Goodman;

(d)     Whether Dohmen committed fraud by concealment because he concealed the Fund's short term investment strategy from Goodman;[7]

(e)     Whether Dohmen breached his duty of loyalty to Goodman by making misrepresentations that other people would be investing in the Fund;

(f)     Whether Dohmen breached his duty of loyalty to Goodman because he concealed the Fund's aggressive investment strategy;[8]

(g)     Whether Dohmen breached his duty of loyalty to Goodman because it

---

[6] Defendant disagrees with this wording and seeks to phrase this issue as follows: Whether Dohmen committed fraud because he misrepresented to Goodman the Fund's "long term" vs. "short term" investment approach.

[7] Defendant disagrees with this wording and seeks to phrase this issue as follows: Whether Dohmen committed fraud by concealment because he concealed whether the Fund followed a "long term" vs. "short term" investment approach

[8] Defendant disagrees with this wording and seeks to phrase this issue as follows: Whether Dohmen breached his duty of loyalty to Goodman because he concealed whether the Fund followed a "long term" vs. "short term" investment approach

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

was inherently uneconomic for Dohmen to operate the hedge fund with only one outside investor and $1.2 million in assets;

(h)   Whether Dohmen committed securities fraud because he misrepresented to Goodman that other people would be investing in the Fund;

(i)   Whether Dohmen committed securities fraud because he misrepresented to Goodman that the Fund was a long term investment.

(j)   Whether any of Goodman's claims are barred by the applicable statute of limitations; and

(k)   If Dohmen is found liable for damages to Goodman, whether Plaintiff failed to mitigate his damages.

9.   Aside from the second session of Mr. Dohmen's deposition scheduled for October 3, 2016, and the depositions of experts, all discovery is complete.

10.   All disclosures under F.R.Civ.P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

Plaintiff objects to Exhibit Nos. 150, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, and 176

The objections and grounds therefor are:

150   The content of this writings is hearsay (FRE 802).

161   The content of writings not from Dohmen in email are hearsay (FRE 802).

170   The content of writings not from Dohmen in email are hearsay (FRE 802).

171   The content of writings not from Dohmen in email are hearsay (FRE 802).

172   The content of writings not from Dohmen in email are hearsay (FRE 802).

173   The content of writings not from Dohmen in email are hearsay (FRE 802).

174   The content of writings not from Dohmen in email are hearsay (FRE 802).

175   The content of writings not from Dohmen in email are hearsay (FRE 802).

176   The content of writings not from Dohmen in email are hearsay (FRE 802).

<u>Defendant objects</u> to Exhibit Nos. 1, 2, 3, 4, 5, 21, 22, 39, 54, 55, 56, and 68. The objections and grounds therefor are:

1   The content of writings not from Dohmen in email are hearsay (FRE 802).

2   The content of writings not from Dohmen in email are hearsay (FRE 802).

3   The content of writings not from Dohmen in email are hearsay (FRE 802).

4   The content of writings not from Dohmen in email are hearsay (FRE 802).

5   The content of writings not from Dohmen in email are hearsay (FRE 802).

21   The content of writings not from Dohmen in email are hearsay (FRE 802).

22   The content of writings not from Dohmen in email are hearsay (FRE 802).

39   The content of writings not from Dohmen in email are hearsay (FRE 802).

54   Lacks foundation for expert opinion (FRE 703); hearsay (FRE 802).

55   Lacks foundation for expert opinion (FRE 703); hearsay (FRE 802).

56   Lacks foundation for expert opinion (FRE 703); hearsay (FRE 802).

68   Lacks foundation for expert opinion (FRE 703); hearsay (FRE 802).

11.   Witness lists of the parties have been filed with the Court.

12.   The following law and motion matters and motions in limine, and no others, are pending or contemplated: Goodman intends to file a motion in limine regarding certain documents recently produced by Dohmen relating to other prospective investors in the Fund (Exhs. 158, 159 and 161-176).

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

14.     The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated: October __, 2016     _____

UNITED STATES MAGISTRATE JUDGE

Approved As To Form And Content.

DATED: October 2, 2016           RUFUS-ISAACS ACLAND & GRANTHAM LLP

By: _____
Alexander Rufus-Isaacs
Attorneys for Plaintiff ALBERT GOODMAN

DATED: October 2, 2016           HOLMES, TAYLOR & JONES LLP

By:  s/Andrew Holmes/
Andrew B. Holmes
Attorneys for Defendant BERT DOHMEN

RUFUS-ISAACS ACLAND & GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUFUS-ISAACS ACLAND &
GRANTHAM LLP
232 N. CANON DRIVE
BEVERLY HILLS, CALIFORNIA 90210
Tel (310) 274-3803 • Fax (310) 860-2430