RUFUS-ISAACS ACLAND & GRANTHAM LLP
ALEXANDER RUFUS-ISAACS, State Bar No. 135747
 aisaacs@rufuslaw.com
232 N. Canon Drive
Beverly Hills, California 90210
Telephone: (310) 274-3803
Facsimile: (310) 860-2430

Attorneys for Plaintiff ALBERT GOODMAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALBERT GOODMAN, an individual, <br><br> Plaintiff, <br><br> v. <br><br> BERT DOHMEN, an individual, <br><br> Defendant. | CASE No. 2:15-cv-00020-FFM <br><br> **PLAINTIFF ALBERT GOODMAN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]** |

## I.   SUMMARY STATEMENT OF CLAIMS:

Plaintiff Albert Goodman ("Goodman") plans to pursue the following claims against the defendant Bert Dohmen ("Dohmen"):

a) Dohmen committed fraud because he misrepresented to Goodman that other people would be investing in the Fund;

b) Dohmen committed fraud because he misrepresented to Goodman that the fund was a long term investment;

c) Dohmen committed fraud by concealment because he concealed the lack of other investors from Goodman;

d) Dohmen committed fraud by concealment because he concealed the Fund's short term investment strategy from Goodman;

7407.1.3.24

e) Dohmen breached his duty of loyalty to Goodman by making misrepresentations that other people would be investing in the Fund;

f) Dohmen breached his duty of loyalty to Goodman because he concealed the Fund's aggressive investment strategy;

g) Dohmen breached his duty of loyalty to Goodman because it was inherently uneconomic for Dohmen to operate the hedge fund with only one outside investor and $1.2 million in assets;

h) Dohmen committed securities fraud because he misrepresented to Goodman that other people would be investing in the Fund; and

i) Dohmen committed securities fraud because he misrepresented to Goodman that the Fund was a long term investment.

## II. ELEMENTS REQUIRED TO ESTABLISH PLAINTIFF'S CLAIMS:

### A. Fraud by Misrepresentation

(1) a false representation, usually one of fact, made by the defendant;

(2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

(3) an intent to induce the plaintiff to act or to refrain from acting;

(4) the plaintiff's action or inaction taken in justifiable reliance upon the representation;

(5) damage to the plaintiff as a result of such reliance.

### B. Fraud by Concealment

(1) the deliberate concealment of material facts by the defendant, or by silence in the face of a duty to speak;

(2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

(3) an intent to induce the plaintiff to act or to refrain from acting;

(4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and

(5) damage to the plaintiff as a result of such reliance.

### C. Breach of Fiduciary Duties

(1) a fiduciary duty existed; and

(2) the defendant breached that duty.

### D. Securities Fraud

(1) a material misrepresentation or omission of fact,

(2) scienter,

(3) a connection with the purchase or sale of a security,

(4) transaction and loss causation, and

(5) economic loss.

## III. SUMMARY OF EVIDENCE IN SUPPORT OF CLAIMS:

### A. Dohmen Committed Fraud Because He Misrepresented To Goodman That Other People Would Be Investing In The Fund;

**1. Element #1: a false representation, usually one of fact, made by the defendant**

In a telephone conversation prior to Goodman investing in the Fund, Dohmen told Goodman that he had other investors for the fund.

In an email dated November 18, 2011, Goodman asked Dohmen, "how many investors do you have?" Dohmen replied in an email dated November 20, 2011: "There are several other close friends I told about the fund and they are now liquidating some assets in order to participate."

### 2. Element #2: the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth

Since the beginning of November, Dohmen had not contacted any new people and as of December 13, 2011, none of his personal friends were reviewing the documents.

In deposition, Dohmen testified that as of November 1, 2011, he had mentioned the Fund to a number of people in general terms, but he had not talked seriously to anyone about the details except Goodman and two other friends who were not interested in investing.

As of November 6, 2011, Dohmen had not spoken to anyone other than Goodman and the two other investors whom he had referenced in his November 1st email.

In deposition, Dohmen testified that he wanted to wait until the Fund was performing well before he made such approaches, and he thought this would take a month or two, i.e., in December or January, if all went well (which it did not).

In deposition, Dohmen testified that he thought his statement about certain "close friends (who) are now liquidating some assets in order to participate" was based on statements that had been made to him, but he refused to identify the individuals who made those statements, and he could not recall if he had spoken to any potential investors other than the two he referenced in his November 1st email.

The Fund started losing money from the very start because its first investments were in gold and according to Dohmen, they "immediately started to go down." This meant that Dohmen never made any further efforts to bring in other investors. However he did not tell Goodman that he was not looking for other investors until May 2012. Yet he had told Fund Associates that he was not looking for other investors in an email dated March 7, 2012.

### 3. Element #3: an intent to induce the plaintiff to act or to refrain from acting

Dohmen knew that Goodman did not want to be the only investor in the Fund and the issue was under discussion from the outset.

November 1, 2011, Dohmen emailed Goodman: "We have not announced the fund yet. Haven't had time to speak to more than two people about it so far. However we will start contacting some of my good friends soon..."

On November 6, 2011, Dohmen wrote to Goodman: "there may be several other people coming in now."

In the November 20th email, Dohmen stated: "Soon we will make an announcement to a wider group of investors who have indicated interest over the past few years in some kind of managed money program."

In an email dated November 26, 2011, Dohmen told Goodman that "until we get a good track record, I only want investors I know, or have been referred by friends, and that I have spoken to." Dohmen was seeking to give Goodman the false impression that he was actively seeking other investors, when in fact he was not.

In an email dated December 9, 2011, Goodman asked Dohmen "how many investors?"

In an email dated December 12, 2011, Goodman again asked Dohmen "how many are we?"

In an email dated December 13, 2011, Dohmen told Goodman that "Personal friends that have expressed interest are now reviewing the documents."

### 4. Element #4: the plaintiff's action or inaction taken in justifiable reliance upon the representation

Goodman believed that Dohmen had other investors who had committed 100% to invest in the Fund.

In reliance on the November 6th email, Goodman believed that there were

some more people coming in.

In reliance on the November 20th email, Goodman believed that other investors would be investing and that they were liquidating their assets to do so, and he based his decision to invest in the Fund and/or to keep his investment in the Fund, on this belief.

As of November 26, 2011, Goodman did not realize that there were no other investors and thought that Dohmen was soliciting other investors.

If he had known that there were no other investors in the Fund, Goodman would not have invested in the Fund.

Goodman was very concerned when he finally discovered on May 14, 2012, that he was the only outside investor in the Fund. In fact, in an email dated May 14, 2012, he asked Dohmen to return his investment, and he was only dissuaded from doing so as a result of further misrepresentations by Dohmen regarding the Fund's long term investment strategy and the provision of detailed quarterly reports.

### 5. Element #5: damage to the plaintiff as a result of such reliance.

Goodman has been damaged because he was thereby induced to invest $500,000, and then a further $500,000, and he lost the entire amount.

### B. Dohmen Committed Fraud Because He Misrepresented To Goodman That The Fund Was A Long Term Investment

#### 1. Element #1: a false representation, usually one of fact, made by the defendant

On May 14, 2012, Dohmen told Goodman that "this is supposed to be a long term investment."

In a report dated June 8, 2012, Dohmen told Goodman that the Fund "is designed to protect and benefit from the long term trends we foresee over the next

several years in several areas." And on page 3 of that report, he says "The primary goal of the fund is to be a precious metals related investment for the long term."

### 2. Element #2: the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth

Dohmen caused the Fund to invest in high-risk areas, predominantly gold-related stocks, just as gold prices crashed, and he also leveraged these investments, thereby increasing their volatility.

Dohmen employed a degree of leverage in the Fund that induced such high variability of return to the Fund as to preclude any adherence to a viable longer-term strategy.

Over the course of 2012, monthly returns of the Fund, positive or negative, exceeded 8% in 11 out of 12 calendar months, 9% in 9 of them, 10% in 8, and 12% in 7. On a cumulative basis, the Fund was down by 1/3 by the end of April, and after recovering to within 11% of its 2012 beginning net equity by the end of August, it was back down to its starting net equity two months later at the end of October on its way to 70% a cumulative decline by year-end.

The 2012 monthly and cumulative returns are so volatile as to be indicative of a hedge fund, ostensibly being managed in pursuit of a long-term strategy, to instead be relatively 'out of control' from one sizeable short-term move to another.

### 3. Element #3: an intent to induce the plaintiff to act or to refrain from acting

Dohmen intended to cause Goodman to keep his investment in the Fund, and not to withdraw it.

### 4. Element #4: the plaintiff's action or inaction taken in justifiable reliance upon the representation

Goodman reasonably relied on Dohmen's representations about its long term

investment strategy when he invested in the Fund, and decided not to withdraw his funds in May 2012.

### 5. Element #5: damage to the plaintiff as a result of such reliance.

Goodman has been damaged because he was induced not to withdraw his investment in the Fund, which as of mid-May 2012 amounted to around $792,000, and subsequently lost his entire $1 million investment.

## C. Dohmen Committed Fraud By Concealment Because He Concealed The Lack Of Other Investors From Goodman

### 1. Element #1: the deliberate concealment of material facts by the defendant, or by silence in the face of a duty to speak

Dohmen had a fiduciary duty to Goodman.

Dohmen did not disclose to Goodman prior to May 14, 2012, that he was the sole outside investor in the Fund.

### 2. Element #2: the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

Dohmen knew that there would be no other outside investors based on the evidence identified under Element #2 of Claim No. 1.

### 3. Element #3: an intent to induce the plaintiff to act or to refrain from acting;

See evidence identified under Element #3 of Claim No. 1.

### 4. Element #4: the plaintiff's action or inaction taken in justifiable reliance upon the representation;

See evidence identified under Element #4 of Claim No. 1.

### 5. Element #5: damage to the plaintiff as a result of such reliance.

Goodman has been damaged because he was thereby induced to invest $500,000, and then a further $500,000, and he lost the entire amount.

### D. Dohmen Committed Fraud By Concealment Because He Concealed The Fund's Short Term Investment Strategy From Goodman

**1. Element #1: the deliberate concealment of material facts by the defendant, or by silence in the face of a duty to speak**

Dohmen had a fiduciary duty to Goodman.

Dohmen did not disclose to Goodman prior to January 25, 2013, that he was not following a long term investment strategy for the Fund.

**2. Element #2: the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;**

See evidence identified under Element #2 of Claim No. 2.

**3. Element #3: an intent to induce the plaintiff to act or to refrain from acting;**

See evidence identified under Element #3 of Claim No. 2

**4. Element #4: the plaintiff's action or inaction taken in justifiable reliance upon the representation;**

See evidence identified under Element #4 of Claim No. 2

**5. Element #5: damage to the plaintiff as a result of such reliance.**

Goodman has been damaged because he was thereby induced to invest $500,000, and then a further $500,000, and he lost the entire amount.

///

///

///

### E. Dohmen Breached His Duty Of Loyalty To Goodman By Making Misrepresentations That Other People Would Be Investing In The Fund

#### 1. Element #1: A fiduciary duty existed;

Dohmen is the principal of the Fund's corporate general partner, and he exercised control over the Fund's property.

#### 2. Element #2: The defendant breached that duty.

Goodman invested his first $500,000 on or about November 14, 2011. In an email dated November 18, 2011, Goodman asked Dohmen, "how many investors do you have?" Dohmen replied in an email dated November 20, 2011: "There are several other close friends I told about the fund and they are now liquidating some assets in order to participate."

In an email dated November 20, 2011, Dohmen stated: "Soon we will make an announcement to a wider group of investors who have indicated interest over the past few years in some kind of managed money program."

In an email dated December 9, 2011, Goodman asked Dohmen "how many investors?" In an email dated December 12, 2011, Goodman again asked Dohmen "how many are we?" In an email dated December 13, 2011, Dohmen told Goodman that "Personal friends that have expressed interest are now reviewing the documents."

These representations were all false, per the evidence set forth in support of Claim #1. Dohmen did not disclose to Goodman prior to May 14, 2012, that he was the sole outside investor in the Fund.

///
///
///
///

### F. Dohmen Breached His Duty Of Loyalty To Goodman Because He Concealed the Fund's Aggressive Investment Strategy[1]

#### 1. Element #1: A fiduciary duty existed;

Dohmen is the principal of the Fund's corporate general partner, and he exercised control over the Fund's property.

#### 2. Element #2: The defendant breached that duty.

See evidence identified under Claim No. 2. Further, Dohmen needed spectacular results to attract new investors, and therefore engaged in a wildly speculative, leveraged, short term trading strategy that could not possibly be reconciled with the long term investment approach that had been represented to Goodman. As Goodman's expert John Maine, states in his declaration, "Dohmen's deviations from his advertised strategy were not a matter of degree but one of a total abandonment." Yet Dohmen failed to disclose this change in strategy to Goodman, and despite promising in May 2012 to provide him with quarterly reports, he failed to do so, or when he did provide reports, he did so late, or he failed to include the relevant information that would reveal the Fund's aggressive investment strategy. And when he finally told Goodman in January 2013 that he was changing his investment strategy, he failed to disclose to Goodman that he had already changed his strategy and had lost disastrously, especially in the last quarter of 2012.

---

[1] "It is settled law in Delaware that the disclosure obligation "represents nothing more than the well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material obligations within the board's control when it seeks shareholder action." *Stroud v. Grace*, 606 A.2d 75, 84 (1992). This duty arises from a combination of a director's "fiduciary duties of care, loyalty, and good faith." *Malone v. Brincat*, 722 A.2d 5, 11 (1998)." *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 519–20 (D. Del. 2001).

### G. Dohmen Breached His Duty Of Loyalty To Goodman Because It Was Inherently Uneconomic For Dohmen To Operate The Hedge Fund With Only One Outside Investor And $1.2 Million In Assets

#### 1. Element #1: A fiduciary duty existed;

Dohmen is the principal of the Fund's corporate general partner, and he exercised control over the Fund's property.

#### 2. Element #2: The defendant breached that duty.

Goodman's investment in the Fund was highly beneficial for Dohmen because he was able to use Goodman's money to pay most of the start-up and ongoing costs of the Fund. On the other hand, it was disastrous for Goodman because as the sole investor, his funds were used to pay for most of the Fund's expenses, whereas if there had been other investors, he would have shared the expenses with them. As explained in the declarations of Robert Conner and John Maine and supporting exhibits, the Fund had significant start-up and operating expenses, and it makes no economic sense to start a hedge fund, which has such expenses, let alone continue to manage it, unless it has far more than $1.2 million in assets and the expenses are spread between a number of investors. Otherwise, there are no economics of scale, and a single investor like Goodman would be better off with his assets in a regular low-cost investment account. Dohmen's duty of loyalty meant that he should not have proceeded with the Fund with Goodman as the only outside investor.

### H. Dohmen Committed Securities Fraud Because He Misrepresented To Goodman That Other People Would Be Investing In The Fund

#### 1. Element #1: A Material Misrepresentation Or Omission Of Fact

See evidence identified under Element no. 1 in Claim No. 1.

## 2. Element #2: Scienter

See evidence identified under Element no. 2 in Claim No. 1.

## 3. Element #3: A Connection With The Purchase Or Sale Of A Security

The misrepresentations were made in connection with the sale to Goodman of an interest in the Fund.

## 4. Element #4: Transaction And Loss Causation

Goodman did not want to be the only outside investor in the Fund. If had known that he was the only outside investor, he would not have invested.

## 5. Element #5: Economic Loss

Goodman invested $1 million in the Fund, which was lost.

# I. Dohmen Committed Securities Fraud Because He Misrepresented To Goodman That The Fund Was A Long Term Investment

## 1. Element #1: A Material Misrepresentation Or Omission Of Fact

See evidence identified under Element no. 1 in Claim No. 1.

## 2. Element #2: Scienter

See evidence identified under Element no. 2 in Claim No. 1.

## 3. Element #3: A Connection With The Purchase Or Sale Of A Security

The misrepresentations were made in connection with the sale to Goodman of an interest in the Fund.

## 4. Element #4: Transaction And Loss Causation

Goodman did not want to be the only outside investor in the Fund. If he had known that he was the only outside investor, he would not have invested.

## 5. Element #5: Economic Loss

1  Goodman invested $1 million in the Fund, which was lost.

2

3  **IV.    ANTICIPATED EVIDENTIARY ISSUES:**

4  Plaintiff intends to file a motion in limine regarding certain documents
5  recently produced by Dohmen relating to other prospective investors in the Fund
6  (Exhs. 158, 159 and 161-176).

7

8  DATED: October 4, 2016          RUFUS-ISAACS ACLAND &
                                    GRANTHAM LLP
9

10

11                                 By: _____
12                                     Alexander Rufus-Isaacs
                                       Attorneys for Plaintiff ALBERT
13                                     GOODMAN

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 232 N. Canon Drive, Beverly Hills, California 90210.

On October 4, 2016, I served true copies of the following document(s) described as **PLAINTIFF ALBERT GOODMAN'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]** on the interested parties in this action as follows:

Andrew B. Holmes
Holmes, Taylor & Jones LLP
617 South Olive Street, Suite 1200
Los Angeles, California 90014
abholmes@htjlaw.com

Matthew D. Taylor
Holmes, Taylor & Jones LLP
617 South Olive Street, Suite 1200
Los Angeles, California 90014
matthew.taylor@htjlaw.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 4, 2016, at Beverly Hills, California.

_Alexander Rufus-Isaacs_

Alexander Rufus-Isaacs

7407.1.3.24

PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW